IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

GARY R. ENGEL and )
CHRISTINE C. ENGEL, )
          )
         Plaintiffs, ) TC-MD 110807D
          )
      v. )
          )
DEPARTMENT OF REVENUE, )
State of Oregon, )
          )
         Defendant. ) **DECISION**

Plaintiffs appeal Defendant's Notice of Proposed Adjustment and/or Distribution, dated

August 9, 2010, disallowing various investment expenses claimed by Plaintiffs for tax year 2006.

The parties submitted the matter to the court on cross-motions for summary judgment.

Plaintiffs' Request for Summary Judgment (Motion) was filed on October 26, 2011.

In its Response to plaintiff's request for summary judgment (Response), filed

November 15, 2011, Defendant raised an issue, questioning whether Plaintiffs appeal was filed

timely and stating that "plaintiffs have used up their appeal rights once they did not appeal to the

Director of the Department of Revenue within 90 days per ORS 305.295(6) following the

May 20, 2010 denial of their May 5, 2010 request for doubtful liability relief under ORS

305.295." (Def's Resp at 1.) In Plaintiffs' Response to Defendant's answer (Reply), filed

December 14, 2011, Plaintiffs state that they "paid the full Oregon Department of Revenue

assessment on August 2, 2010 and filed with the Oregon Tax Court on May 31, 2011 well within

the two year time period." (Ptfs' Reply at 1; *see id.*, Ex 15 at 1; *id.*, Ex 16 at 1.) Defendant's

conclusion that Plaintiffs did not file a timely appeal is not supported by the facts and law.

/ / /

I.  STATEMENT OF FACTS

The parties submitted stipulated facts, filed September 29, 2011.  For tax year 2006, Plaintiffs claimed various investment expenses.  Defendant disallowed some of those claimed expenses.

A.      *Advisory Fees*

The parties agree that Plaintiffs "hired a Trading Advisor, Douglas Buckley [(Buckley)], Trustee for Intuitive Chaos Trust, under a written agreement where the taxpayer agreed to pay for service."  (Stip Facts at 1.)  The parties agree that Plaintiffs "gave [Buckley] Power of Attorney over 3rd Party Trading Accounts and a sum of money to manage."  (*Id*.)  The parties agreed that Plaintiffs issued "$38,000 in checks paid to Intuitive Chaos Trust and/or Douglas Buckley * * *."  (*Id*.)  Plaintiffs allege that those payments were made under the terms of the Trading Advisor Agreement (Agreement) entered into November 14, 2005, between Plaintiffs and Buckley.  (Ptfs' Mot, Ex 1.)  The Agreement stated that Plaintiffs would "pay a fee to the Trading Advisor for the Services in the amount of thirty five percent (35%) of the total profits of all trading accounts managed by the Trading Advisor for [Plaintiffs] on a monthly basis."  (*Id*., Ex 1 at 1.)

On their 2006 federal and state income tax return, Plaintiffs deducted $38,000, claiming an investment expense for advisory fees.  (Ptfs' Mot at 1.)  Defendant disallowed the deduction, stating that (1) "plaintiff has not shown any billings or receipts or statements to explain what was being paid with the multiple checks that were paid to" Buckley; (2) "plaintiff [Gary R. Engel] was an active 50% in Intuitive Chaos Financial Group, LLC with Intuitive Chaos Trust[;]" (3) "plaintiff clearly assumed responsibility with the investment advisor for management, contribution of capital or services, and liability for debts[;]" (4) "[a] large part of the investments

made by the advisor were in Treasury Bills for which the interest is not taxable in Oregon per ORS 316.680[,]" and "any expense related to that nontaxable income is not deductible on the Oregon return[;]" and (5) "[t]here was no deduction for the associated investment expense." (Def's Resp at 1, 2.)

Plaintiffs repute the claim that statements or receipts issued by Buckley would substantiate the claimed investment expense, because Buckley was indicted for fraud and the indictment stated that "statements of account * * * calculated a 35% or 30% fee based on the materially false and inflated profit, not the actual profit realized on the accounts during the relevant time period" and "investors paid defendant [Buckley] his fees, based on the materially false and inflated profits." (Ptfs' Reply, Ex 20 at 3, 4.) Plaintiffs state that the parties stipulated that payment totaling $38,000 were made to Buckley, they submitted copies of canceled checks to substantiate the total amount claimed, and there is no evidence that any "of these funds were placed in any account other than Mr. Buckley's." (Ptfs' Reply at 1; *see also* Ptfs' Mot, Ex 2.)

Plaintiffs allege that "[n]o action has been taken against the Plaintiff based upon the Plaintiff's investments or activity in the Intuitive Chaos Financial Group or Intuitive Chaos Trust matter" and "Plaintiff has provided witness testimony for the court against Mr. Buckley." (Ptfs' Reply at 2.) Plaintiffs state that even though "Plaintiff invested money in Intuitive Chaos Financial Group, he had no control over any books, records or bank accounts." (*Id*.)

With respect to Defendant's allegation that "an adjustment for non taxable income portion of investment fees needs to be made[,]" Plaintiffs state that it was their "understanding that the Trading fees applied only to Trading profits not interest earned[]" and "[n]one of the fee calculations shown to the Plaintiff included interest earned and Trading Advisor agreement refers

/ / /

to 'provide investment trading services'.  Interest earned on bonds is not mentioned in the agreement."  (Ptfs' Reply at 1-2.)

B.    *Depreciation*

Plaintiffs claim a depreciation deduction for a computer "used by the taxpayer and also provided to the investment advisor * * *."  (Ptfs' Mot at 1; *see also id*., Ex 3 at 1.)  Defendant denied the claimed deduction, stating that (1) Plaintiffs failed to "provide receipts to verify purchase or provide a log or other means to verify the investment use percentage[;]" (2) there is no provision in the Agreement that Plaintiffs purchased equipment for Buckley; and (3) because Plaintiffs are "paying an advisor to make all trades on their behalf, there is no ordinary and necessary investment purpose for the purchase of computer equipment or software."  (Def's Resp at 3.)

Plaintiffs state in their Reply that during the audit "Plaintiff did support the purchase with invoice and credit card billing statements."  (Ptfs' Reply at 3.)  Plaintiffs state that the computer was used by Plaintiff "to monitor the trading activity as well as developing the investment summary and fee payment schedule which was previously submitted."  (*Id*.)

C.    *Other claimed investment expenses*

Each of the following expenses claimed by Plaintiffs was denied by Defendant. Defendant stated in its Response that the expenses were denied because (1) "plaintiffs did not show investment purpose and other required elements for expenses limited by IRC 274, and for which very few receipts were provided[;]" and (2) "plaintiffs have a contract paying extremely high fees for someone else to make all trading decisions on their behalf; therefore there is no ordinary and necessary reason for expenses of cell phone, legal insurance membership, dining,

/ / /

wire fees, subscriptions, and parking expense to be considered as investment expense." (Def's Resp at 3.)

### 1. *Prepaid legal fees*

Plaintiffs claimed a deduction of "$179.00 in Legal Fees paid under a contract Prepaid Legal plan which is automatically charged to the taxpayer's credit card without monthly individual invoice." (Ptfs' Mot at 2; *see also id*., Ex 4.)

### 2. *Wire transfer fees*

Plaintiffs claimed a deduction of "$170.00 in wire transfer fees (also without individual invoices) as represented by enclosed bank statements from taxpayers at Pacific NW Federal Credit Union. Fees were directly related to money transfers to the investment account at RJ O'Brien." (*Id.* at 2; *see also id*., Ex 5.) The wire transfer charge appeared below a stated amount for a wire transfer. (*Id.*, Ex 5 at 1-5.)

### 3. *Parking*

Plaintiffs claimed $7.00 for parking, stating that "Plaintiff produced both copies of parking invoices and his daily appointment calendar for proof of this deduction." (*Id*. at 2; *see also id*., Ex 6; Ptfs' Reply, Ex 21at 9.)

### 4. *Subscription stock service*

Plaintiffs claimed a deduction of "$306.00 in subscription stock services directly billed to Plaintiff's credit card as well as payment to the Trade Advisor for subscription provided to him." (Ptfs' Mot at 2; *see also id*., Ex 7; Ptfs' Reply, Ex 21 at 10-13.)

### 5. *Office supply expense*

Plaintiffs claimed a deduction of "$127.00 in office supply expenses[,]" that was substantiated with a "[c]opy of credit card charge as well as individual receipts from stores Fry's

Electronics, Office Max and Office Depot." (Ptfs' Mot at 2; *see also id.*, Ex 8; Ptfs' Reply, Ex 21 at 14.) Plaintiffs' respond to Defendant's denial, stating:

> "The receipts for specific office items/supplies were provided and it would seem redundant to state that these specific supplies were utilized in the activity when so many other items listed on the credit card statements were not included. Why else would the Taxpayer have maintained and provided these items."

(Ptfs' Reply at 4.)

6. *Cell phone*

Plaintiffs claimed a deduction for "[c]ell phone charges of $454.00 representing 50% of total charges of $908.00 as shown on cell company invoices and payment statement from credit card plus additional $25.00 for long distance charges." (Ptfs' Mot at 2; *see also id.*, Ex 9.) Plaintiffs stated in their Reply that "[c]ell phone usage (at least a percentage of the charges) is a necessary part of business and investment as contact with the Trading Advisor and other investors is needed." (Ptfs' Reply at 3.)

7. *Meal expense*

Plaintiffs claimed a deduction of "$182.00 of meals expense which is 50% (statutory deduction) of total $364.00 food purchase listed on credit card statements." (Ptfs' Mot at 2; *see also id.*, Ex 10; Ptfs' Reply, Ex 21 at 1-8.)

D. *Parties additional information*

Plaintiffs state that "[t]he IRS audited the return and allowed as originally filed to stand as Filed." (Ptfs' Mot at 2.) Plaintiffs further state:

/ / /

/ / /

/ / /

/ / /

> "This 'no change' audit certainly should not be ignored on items like the Investment Advisor fees. * * * The 'no change' report to the taxpayer's tax return by an experienced Internal Revenue Auditor should carry some value with the court that this taxpayer is entitled to their deductions and has provided sufficient documentation under the Internal Revenue code as well as the Oregon Revenue statutes."

(Ptfs' Reply at 4.)

With respect to all expenses claimed by Plaintiffs, Defendant concluded that Plaintiffs

> "may have made payments, but they have not shown that those payments were for investment expense and not for investment funds, personal expenses, or for the separate partnership entity for which Mr. Engel was a 50% active partner with the advisor, Intuitive Chaos Trust. There was a clear lack of a paper trail for investment gains to justify the contractual advisory fees. There was a distinct blurring of lines for investment and expenses between personal income and expenses and the partnership income and expenses. There was an element of nondeductible investment expense for Oregon that was not deducted from the subtraction of T-bill interest on the Oregon return showing an inconsistent attitude towards the deductibility of investment expense. The plaintiffs have not legitimized their appeal of the audit."

(Def's Resp at 3-4.)

## II. ANALYSIS

As this court has previously noted, "[t]he Oregon legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law. ORS 316.007." *Ellison v. Dept. of Rev.*, TC-MD No 041142D, WL 2414746 at *6 (Sept 23, 2005). As a result, the legislature adopted, by reference, the federal definition for deductions, including those allowed under section 212 of the Internal Revenue Code (IRC)[1] for non-business investment activities.

IRC section 212 allows a deduction for "all the ordinary and necessary" expenses paid or incurred during the taxable year "for the production or collection of income* * *." "To be

---

[1] All references to the IRC and accompanying regulations are to the 1986 code, and include updates applicable to 2006.

'necessary' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253, 2002 WL 236685 at *2 (internal citations omitted). The Oregon Tax Court has stated that "an ordinary expense is one which is customary or usual. This does not mean customary or usual within the taxpayer's experience but rather in the experience of a particular trade, industry or community." *Roelli v. Dept. of Rev.*, 10 OTR 256, 258 (1986) (citing *Welch v. Helvering*, 290 US 111, 54 S Ct 8, 78 L Ed 212 (1933)).

It is a well settled principle that "[d]eductions are strictly a matter of legislative grace, and a taxpayer must meet the specific statutory requirements for any deduction claimed." *Gapikia v. Comm'r*, 81 TCM (CCH) 1488, WL 337038 at *2 (2001) (citations omitted). "Taxpayers are required to maintain records sufficient to substantiate their claimed deductions." *Id*. For example, IRC section 274 imposes strict substantiation of expenses for travel, meals and entertainment, and gifts, and with respect to any listed property as defined in section 280F(d)(4). *Id*.

The issue is whether Plaintiffs' claimed expenses are ordinary and necessary. "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427.[2] Plaintiffs must establish their claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530, WL 914208 at *2 (July 12, 2001) (citing *Feves v. Dept. of Rev.*, 4 OTR 302 (1971)).

/ / /

---

[2] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 2005.

Common expenses incurred in association with investment activities are fees including advisory and wire transfers, subscriptions to investment journals, office expenses and other similar expenses. Plaintiffs deducted advisory fees in the amount of $38,000 and that deduction was substantiated by a signed contract between Plaintiffs and their financial advisor and by a canceled checked made payable to the financial advisor. Defendant denied the deduction, primarily because Plaintiffs did not produce invoices to match each payment tendered. Plaintiffs' financial advisor was indicted on fraud charges with the indictment stating that statement of accounts sent to clients calculated a fee "based on the materially false and inflated profit, not the actual profit realized on the accounts during the relevant time period." (Ptfs' Reply, Ex 20 at 3.) Even though a prudent investor should not submit payment without a proper invoice, Plaintiffs relied on their personal relationship with their advisor and sent payments based their advisor's verbal requests. The court concludes that, given Plaintiffs' evidence and the alleged criminal intent of the advisor, Plaintiffs are entitled to claim the advisory fee deduction with the following required adjustment. No deduction is allowed for "*any amount spent in the production*" or collection of tax-exempt income. ORS 316.680(1)(a) (emphasis added). The court has insufficient evidence to determine the required reduction to the allowable advisory fee deduction, and the parties are requested to work together to determine the portion of the advisory fee that is attributable to advisory expenses incurred to invest in United States Treasury Bills and is not an allowable deduction.

Plaintiffs provided sufficient evidence entitling them to claim deductions for wire transfers and office expenses. The court allows Plaintiffs claimed deduction of $170 for wire transfer fees and $127 for office expenses.

With respect to the other claimed expenses, including depreciation expense for computer, legal fees, parking, cell phone, subscriptions and meals expense, the court had no evidence

showing that any of those expenses are allowable. Plaintiffs did not testify. Receipts without supporting evidence to link the expense to the investment activity is insufficient. Plaintiffs relied on general statements by their representative, e.g., "[c]ell phone usage * * * is a necessary part of business and investment as contact with the Trading Advisor and other investors is needed." (Ptfs' Reply at e.) There was no evidence including a log or similar use report showing the "cell phone usage" was used primarily for investment activities rather than personal use. Plaintiffs submitted no evidence documenting the purchase of the computer and documenting the investment activity usage. Legal expenses which are reasonable in amount and show some connection to the management of property held for the production of income are deductible. In this case, Plaintiffs have shown no relationship between the prepaid legal fees and their investment activities. Plaintiffs claimed a subscription expense for stock services purchased for the use of their advisor. Plaintiffs provided no evidence that it was customary or usual for a client to purchase a subscription stock service for their investment advisor. A similar concern arises with respect to whether it is customary or usual for a client to purchase meals for their investment advisor. No evidence was provided to show that it is customary or usual.

It is important to note that the above investment activity expenses that were determined by the court to be allowable are deductible by Plaintiffs if those expenses exceed two percent of Plaintiffs' adjusted gross income. IRC § 67(a).

### III. CONCLUSION

After careful review of the evidence, the court concludes that Plaintiffs are entitled to deduct the following investment activity expenses: advisory fees adjusted for portion of fee attributable to expenses incurred to invest in U.S. Treasury Bills, wire transfer fees, and office expenses. The allowable expenses are deductible by Plaintiffs provided those expenses exceed

two percent of Plaintiffs' adjusted gross income. IRC § 67(a). Plaintiffs' claimed deductions for depreciation, meals, parking, prepaid legal fees, cell phone, and subscriptions are denied. Now, therefore,

IT IS THE DECISION OF THIS COURT that for tax year 2006 Plaintiffs are entitled to an investment activity expense deduction for wire transfer fees in the amount of $170 and office supplies in the amount of $127.

IT IS FURTHER DECIDED that for tax year 2006 Plaintiffs are entitled to an investment activity expense deduction for advisory fees in the amount of $38,000, reduced by the portion of the fee attributable to investing in U. S. Treasury Bills.

IT IS FURTHER DECIDED that for tax year 2006 Plaintiffs are not entitled to the following claimed but unsubstantiated investment activity expenses: legal fees in the amount of $179; parking in the amount of $7; subscription stock services in the amount of $306; cell phone charges in the amount of $454; and meals expense in the amount of $182.

Dated this ___ day of February 2012.


_____
JILL A. TANNER
PRESIDING MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on February 16, 2012. The Court filed and entered this document on February 16, 2012.*